May it please the court, my name is Michael Bradford and I'm here on behalf of the appellant Spireon, Inc. This is a TTAB case, an appeal from a TTAB case and the primary purpose of the Trademarks Office principal register is to provide public notice and I think it's important to understand the state of the principal register at the time that the appellant filed his application. So in late 2018, Spireon filed an application to register FL-Flex for electronic tracking devices for trailers and cargo containers. It was approved by the Trademarks Office for publication over numerous marks that contain the flex term and include appellee's flex mark for supply chain management and logistics as well as electronics design, development, and manufacture and its flex pulse mark for those same services and also software for supply chain management. But it also registered over another mark for flex for computer software used for logistics management, another mark flex for computer software platforms for use in managing supply chains, another mark flex for transportation controllers for use with vehicles, so electronic that included flex for logistics and supply chain related goods and services much less hundreds of other flex marks for a realm of other goods and services. And of course FL-Flex was approved over this landscape of marks as I would have expected and this court explained in Juice Generation and Jack Wolfskin when a portion of a mark appears in numerous third party registrations and is used by numerous entities, that portion that term is weak. And here it's not just a portion of the mark appearing in multiple registrations, the entirety of the mark flex appears in numerous registrations by itself. And in such a case where a term is weak, the one entity's rights in that term are limited and other entities can coexist if they have relatively minor differences in the marks for the goods and services. Here flex, again, it's very weak. Three flex registrations for very similar, almost identical services. Flex for electronic devices, SC-Flex for software for supply chain management. And so I'm a patent and trademark attorney. In addition to appeals, one of the trademark attorney's jobs is clearing trademarks. And the primary source that we rely on when we clear trademarks are the Trademark Office Principal Register. And if flex, if Sperian had come and said, well, I'd like to register FL-Flex, we'd looked at the Principal Register and said, well, these marks register, these flex, identical flex marks registered over each other and many other registrations containing the flex term, you have the additional FL term, the FL flex mark. You're selling tracking products that are different than what these other entities have So if they're able to register, they're more similar to each other than you are to them, your mark should be fine to be registered. So if the TTAB's decision in this case is right, the Principal Register is not serving its purpose. It's flawed. It can't be relied on. It's not serving a public notice function. Counselor, the board found that, found 30 examples of registered marks, the use of term flex, correct? Excuse me. It found around 30 instances on the register where the term flex is used. I don't have the exact, that sounds correct. But then the board went on and said 10 should be given no weight, 15 included other letters or words in addition to flex, and overall it found that it reduced the number of registrations from about 30 to 5. Correct, Your Honor. I think that's actually a legal error on their part. The juice generation case explains that composite marks must be considered to determine if a portion is weak. So if they take away composite marks and just focus on marks that only have that term, that's not a correct analysis. Well, let's talk, what about expired marks? Well, I agree. And expired marks actually were not in the chart in our briefs. We took out the expired marks and we actually took out the marks that the trademark office said were not relevant to supply chain and logistics. So the marks in here are just the ones that they did consider and then ones they did not consider because they're composite marks. And I think it's interesting to note that they did not consider, for example, SC flex because it has different letters that create a different commercial impression. FL flex has two additional letters. So if SC flex creates a different commercial impression than flex, then surely FL flex also creates a different commercial impression. But one was one word and FL flex is two. I think that's not a material alteration. Just having a space between the letters doesn't material or alter the commercial impression of a mark. I don't believe consumers are going to see a space and be like, oh, that alters the commercial impression of the FL flex mark. So that is one of the legal errors here. But even if they were correct in disregarding the vast majority of the registrations, the fact remains that three registrations for flex by itself registered over each other for services are much more similar to themselves than what Sperian is providing. So that just shows extreme weakness. And the TTAB did not, they didn't conduct any substantive review of those registrations. The board went back and looked at juice generation and some of the other cases, Jack Wolfenstein, and said that in this case, we don't reach the same numerous amount of registrations and in most cases. And they did say that. But isn't this a substantial evidence issue? At the end of the day, isn't the board looking at what's before it and decided whether that's numerous or not? Well, I believe the failure to consider the composite marks is legal error. But if you consider the composite marks, the numbers are similar to Juice and Wolfenstein. Correct, if you do, and actually I think more. So if they had considered, but if this is just a numbers game, and I think that's an incorrect analysis, then I still think we should properly be found to be more evidence than the prior cases. But I still think it's an error just to focus on the number of registrations. Instead, they should have focused on the substance of three identical flex registrations. And when you take the weakness of flex in the proper context, the addition of FL to the FL flex mark is sufficient to create a different commercial impression. And the TTAB just waved FL away. They said, well, FL, that's just two letters. It's nondistinctive. So I believe that's legal error. You're required to consider marks in their entirety. You can't just wave away two letters because you don't think two letters can be distinctive. Whereas, again, they said FC flex. Is it significant that FL identifies a whole series of products? Well, I think that does show it's a house mark. And these are supposed to be considered as they're seen in the marketplace. Consumers see FL1, FL2, FL3, FL solar, FL flex. The marketplace, they're not going to say, oh, that FL flex mark is Flextronics or Flex Limiteds. They have seen a line of products. And that further shows the differences in the goods and services here. And for example, it's a CCPA decision, but it's my understanding that applies here. The Kautenberg decision in CCPA says that only strong marks are assertable against non-competitive products. And Flex Limited, this isn't a strong mark. At a minimum, I think we can say that. And the Flex Limited has not asserted rights to electronic devices.  And I think it's important then to look at Flex. Another entity has registered Flex for electronic devices that are integrated into vehicles. And other entities that are included here have Flex in their names with other words. For example, Bad Elf Flex is registered, I believe they're next on the appeal, for GPS apparatuses. And VDO Flex Light is registered for, I believe, also GPS apparatuses. So the differences in the marks and the differences in the goods and services here are more than sufficient to avoid a likelihood of confusion, especially when you consider the weakness of Flex, which is a highly suggestive term. Flex is used all the time to suggest flexibility. And for the TTAB, just to ignore the suggestive context of what Flex means, for them to ignore the huge number of third parties that have registered and used Flex marks, I think is in legal error. So I believe they should be reversed. Even if we don't go with you on that, and I make no judgment, how about the fact that the board concentrated on describing and deciding Flex Plus and misreading Flex Pulse? Yeah, I mean, I didn't raise that on the board. They didn't even analyze Pulse. I think that shows, well, I'm just surprised that occurred, but yes. Well, I'm just wondering if you don't think that's an independent reason to send it back. I think that's an independent reason to have it vacated, but I believe this should be reversed in its entirety. Well, I know you do, but if not... Well, sure, I'll take that as well. Well, I know. Ask him, too. But that seems pretty significant, how it happened. They didn't even mention the actual trademark. I agree that for the Flex Pulse mark, that is the grounds. But I think just the Flex mark by itself is also incorrect. But it's not. The Flex Pulse error is not an independent ground for reversal, or for remand, because even if we would agree that they made a mistake there, if we agree with their analysis of the FL Flex slash Flex situation, that in itself is sufficient to affirm the matter. Well, I don't... So Flex Pulse has additional goods and services, so I believe it would still need to be vacated for full consideration of the scope of the goods and services for which they did look at the mark. You mean the Flex Pulse ground is applicable for some goods and services that the Flex Pulse... So Flex Pulse... Sorry. Go ahead. Flex Pulse is also registered for computer software for supply chain management, that Flex is not. So if the grounds are based on that at all, that would be an independent... Isn't this harmless error that we're looking at? Because if there's a finding that just Flex alone causes likelihood of confusion, what does it matter if you add something to it or not, like Flex does? If Flex... If you can't register Flex, you're out, right? Yeah. Well, but we're registering FL Flex, which I think is a stinking mark. But if the ground is based at all on the different goods and services that are in Flex Pulse, then that has to be sent back. But if the determination is that Flex, that there is a likelihood of confusion with Flex for the goods and services that are in both the Flex and Flex Pulse marks, then I would tend to agree with you. But I just think that would be an incorrect decision. Do you all have any further questions? We'll give you two minutes for a model. Okay. Thank you, Your Honor. Thank you, Your Honor, and may it please the Court. Your Honors, the issue in this case is that there's a likelihood of confusion between Spirion's proposed FL Flex mark and the Flex Flex Stylized and Flex Pulse marks. Isn't there an inconsistency in the Court's decision here with respect to the analysis of the Flex proposition because they've said the addition of FL Flex making a composite mark makes no difference, but then they've dismissed a lot of registrations of uses on the ground of their composite marks. That doesn't seem consistent, and they make no effort to reconcile that. Your Honor, this Court's precedent is clear that when comparing marks, composite marks must be viewed in their entirety. But every time this Court has said that, they've added a caveat that the Board can and should exercise reasoned judgment to identify aspects of the marks that are more dominant than others. They don't say that there's a difference in the nature of the composite marks. They dismiss the registrations and uses simply on the ground that they are composite. Respectfully, Your Honor, I don't believe that's accurate. They actually did include – Show me where it's not accurate. They included – of the five marks that they included in the final comparison, two of them were composite marks, Load Flex and Value Flex. Show me where the Board said what they're saying. I don't see that. All I see is they dismiss registrations and uses on the ground that they have additional features to them, in other words, they're composite marks. Your Honor, I believe what they said was they have additional features that detract from the word flex, which they viewed as – Show me where it's not. All I see, page 60, they talk about these marks contain additional elements, and then the same thing is true at 65 where they are talking about uses and they say additional elements. Did you say additional elements? There's no explanation as to why the additional elements here are different from the FL flex composite. Well, Your Honor, to talk about the SC flex mark, which is at the centerpiece. No, no, no, answer my question. My question is they don't explain other than saying they contain additional features, right? I believe – I'm not finding the specific comment here, but I believe what they said was they're – No, no, it's not what you believe they said. You've got to show us what they said. Okay, so what they said on page 16 of the decision is 15 of these marks are compound terms, including another word or letters in addition to flex, that change the overall meaning and or commercial impression of the marks as a whole. So they made a factual finding, not just that these composite marks had additional elements, but those additional elements change the overall meaning and or commercial impression of the marks as a whole. And I think that was a valid factual finding on the board under the substantial evidence standard. And where did they say something similar about the uses? Well, the use marks, Your Honor, I believe were in the context of the commercial strength, which they found to not favor flex. Where are you talking about? Well, on page 21 to 22, they say – That's a different point. They just say additional elements that cause many of them to be less similar. Right, that cause them to be less similar. So it's not the fact that the additional elements exist. It's the fact that the additional elements cause the marks to be less similar. And if you look at the way FC flex actually appears in the register, you can see this is different from FL flex. This is FC in large bold letters and flex in small italicized letters. It's not a registration in standard character? I'm sorry, Your Honor? It's not a standard character registration? No, unlike the FL flex proposed registration, which is a standard character registration, which is, I think, an important point the board made, particularly in regard to the flex stylized mark, the board noted that if Sperion's registration were to go through, they could simply add FL in front of flex limited's flex stylized mark. Is the SC flex registration a standard registration or a stylized registration? This is how it appears in the register, Your Honor. It's this stylized logo. Yeah, but what does the registration say? Does it say standard character? The mark consists of SC flex in a stylized font under description of mark, and that's Appendix 1113. So the board's factual finding and its factual decision to cull the list of relevant marks was well supported by the record and on all fours of this court's precedence. In the Copeland-Smith case, we decided that there are three uses of registrations here that are virtually identical. They use the flex term standing alone. That is part of the, under the Juice Generation and Jack Wolfskin cases, those can be considered as evidence of third-party use that would weaken a mark. But the Juice Generation and Jack Wolfskin cases are clear that in order for third-party use to weaken a registered mark, there must be extensive, ubiquitous, voluminous, widespread use by third parties. What does that mean in terms of actual numbers, ubiquitous? Your Honor, I don't know that there is a specific over under that standard. It is a factual determination that the board is entitled to make. In Juice Generation, there were 26 third-party uses that were found relevant. In Jack Wolfskin, there were 14. Here there are five. And the board made a factual finding that that was not sufficient to weaken the protection of flex-limited flex marks. I think it's helpful to take a step back and look at the standard of review on the subsidiary factual findings. It is true that the ultimate conclusion of likelihood of confusion is a legal determination that's reviewed de novo. But the subsidiary factual findings are reduced for substantial evidence. The substantial evidence standard under this court's precedent simply states that if there are two possible outcomes based on the evidence, as long as the board's conclusion was reasonable and supportable, it should stand. The Copeland-Smith case has some very useful guidance on this. In that case, this court found that the appellant did nothing more than raise arbitrary disagreement with the board's findings regarding the impact of the evidence. The court in that case acknowledged that comparing marks is subjective and fact-dependent. It's not subjective and fact-dependent. It's exactly the same mark for the same goods. Where do Wolfskin and Juice say that that's irrelevant? For the exact same marks and the exact same goods, it is relevant. But having only three instances is not sufficient under those precedents. Why not? Because it's not widespread, ubiquitous, and voluminous use of the mark by third parties. Are those cases saying that where it's an identical mark for identical goods, that you have to have some large number of competing marks? What the cases say is that third-party use in general must be ubiquitous and voluminous. The cases don't say that if you have one, two, three, four, or five identical uses of the mark for the same goods, then that undercuts an inherently distinctive mark. Did the court in Juice Generation make that statement in establishing a standard or a level that must be met? And if so, isn't that a question of law? No, Your Honor. It's a question of fact because in those cases, like I said, the court in Juice Generation and Jack Wolfskin did not set a minimum number of third-party uses that would show weakness of a mark. It's a factual determination that is qualitative and quantitative. It compares the similarity of the marks, which— after the culling, we're only left with five marks. They—because they're not ubiquitous and there's not a plethora of these marks, we find them to be of low probative weight. Yes, Your Honor, and that was a factual determination based on the evidence. It was—and they were seeking—they were drawing guidance from this court's precedents. But what does ubiquitous mean in that context? Your Honor, it's a factual determination is all I can say. It's the— Yeah, but how is it that it's fair to allow the second and third people to register the same mark for the same goods, but then the fourth person comes along who should have a stronger case than the second and third person and is denied registration? How do you justify that? Well, as a procedural matter, this is the one—this is the mark that— this mark caught our attention because they sent us a cease and desist letter saying there was a risk of confusion between our two marks. So we filed an opposition. Okay, but you're not addressing my question. Well, Your Honor, I believe—just as a procedural matter, the fairness comes from the fact that we had a statutory right to a cause of action. Let me address my question. Why is it fair to say that the second and third people can register that same mark for the same goods, and the fourth person comes along and should have a stronger case, and you say, oh, no, no, no, the fourth person can't register? There's not a final factual and legal determination that those first three should have been allowed over the flex marks in the context of an opposition proceeding. Was it ever raised? Not that I'm aware of, Your Honor. Well, then there wouldn't be, would there? No, Your Honor. Like I said, the reason we're here is because we caught sight of this one. But that doesn't really solve the problem. I just raised it. Well, Your Honor, it's a— If the contrary approach would be if there's even one identical mark for similar goods and services, then the floodgates are open and anybody can file confusingly similar marks for goods and services. I don't think that's fair either. That's not what the law says. Well, but it's up to the trademark holder to police its marks, right? Yes, Your Honor, and we did that here, and we got a fair— with respect to the first and second similar identical registrations too. Your Honor, we do police our marks. We police our marks very aggressively. I don't know the circumstances under which those first three marks were allowed through, but I do not believe that the law commands that the first, second, or third registration that slips past the goalie opens the floodgates for everybody else to register their own identical and confusingly similar marks. Or not identical, but confusingly similar marks. I don't think that—I don't believe the law says that. What the law says is if there is a strong mark or if there is a mark that's entitled to the normal scope of protection, which the Flex marks are, if there is similarity between the marks, if there's similarity of the goods and services, if there's similarity of the trade channels and customers, all of which were found in Flex's favor here, then the senior markholder is entitled to bring a cause of action to oppose the mark. And if there is ubiquitous third-party use, more than three, more than five, then there is—our mark is weakened. But— Where does it say more than 305? It doesn't. Why do you say that? The board found that five was not ubiquitous. That is a factual determination. They were drawing guidance from Jewish Generation and Jack Wolfskin. They said this isn't as high as those. Okay, but those—we're talking about a different situation. We're talking about identical marks for identical goods. I understand, Your Honor. And I thought you agreed that they don't have to be ubiquitous under those circumstances. No, I don't agree with that. I think even identical marks is part of the overall inquiry into the third-party landscape and how widely used and ubiquitous and voluminous third-party use of the same or similar markets is. It has to be ubiquitous even if you have three identical marks for identical goods? If you—I keep coming back to this. I believe it's a factual determination. I think it would be reasonable for the board to conclude if there were, let's say, three identical marks and ten similar marks. Also, my recollection, and you can show me if I'm wrong, is that the board here was dismissive of the identical marks for identical goods on the graph. They weren't ubiquitous, right? Right, as part of the five total marks. That seems to be the long standard, right? I disagree, Your Honor. I think the entire field of third-party use must be ubiquitous under Jewish Generation and Jack Wolfskin. Now, if the third-party use is more tilted toward identical marks, maybe a lower number would be satisfactory. But the board's review of the factual record and the factual determination as to the impact of those third-party uses and third-party registrations is reviewed for substantial evidence and was thorough and reasonable. Let me ask you before your time runs out. What do you suggest we do with what the board did on PULSE and PLUS by not even recognizing the mark that was actually before it? That was an unfortunate, harmless error by the board, Your Honor. That's your position? Yes, Your Honor. Under the Omaha Steaks case, there was a typo in the board's decision in that case, and this court said, well, this is an obvious typo, the balance of error. Well, this wasn't a typo. They decided the case on that basis. The board did not decide the case on that basis. Well, it's that part of the case on that basis. Well, there was one paragraph in the similarity of the marks. You can take out that paragraph, and we still win similarity of the marks. You can take out similarity of the marks. Well, we're bound by what they did, not what they might have done. Under the harmless errors, what I'm saying is you can treat that as a harmless error, excise that paragraph entirely from the board's decision, and we would still support sustaining our opposition. But the problem is that the board has to look at the entirety of the mark, and here it obviously didn't do that. I'm just wondering to what extent does that taint all the other decisions that have been made? And you heard my example of harmless error that I made to opposing counsel. Setting that aside, isn't this a pretty egregious error on the part of the board? I wouldn't want to call it egregious, Your Honor. I think it's an unfortunate harmless error, as I said. If you remove that paragraph and just focus on flex and flex stylized, particularly in light of the plain lettering nature of the proposed registration, there is so much likelihood of confusion as to flex and flex stylized independent of the flex pulse issue that the board's decision can be sustained on that basis. Thank you, Your Honor. I mean I think I have an answer to why Appellee may have had trouble answering the question about multiple identical marks. It's because flex limited is the third registrant. Flex registered its flex mark over a registration for flex for computer software for logistics management, another registration for flex for computer software platforms for use in supply chain management. So it wasn't up to them to police the mark. They're the third registrant. So now they come in and say, well, our rights are broader. But the fact is they obtained registrations over very similar, almost identical goods and services for the flex mark. And as far as the juice generation case, they explained at page 1338 in juice generation that the bulk of the marks they were looking at included other terms in addition to the terms at issue that they found to be weak. So there the bulk included other terms. And there was no suggestion that that all of a sudden meant that those terms were, that those marks should not be considered. So here, three identical flex term marks, much more similar to each other than our clients. And then when you put in the whole universe of flex composite marks, I think we've far exceeded the ubiquitous and extensive use of flex and marks in the logistics and supply chain management field. So we don't believe there's any confusion here. Is the SC flex mark a stylized registration? I just looked, and it is stylized. There's no design, but it is a stylized registration. Okay. All right. Thank you. Thank you. Thank you. Thank you. Thank you.